# September Term, 1918.

No. 8534.

ANTERO & LOST PARK RESERVOIR COMPANY v. OHLER ET AL.

WATER RIGHTS—APPROPRIATION—*Negligence in Completion of the Work.* The appropriator for several years failed to carry on its works for the diversion of the water and its application to beneficial uses. Its appropriation was dated from the resumption of activity.

Garrigues, J. Dissented upon the ground that the delays were excused by the magnitude and difficulties of the work, the death of one of the active parties, and the financial stringency attending the panic of 1893.

*Error to Park District Court, Hon. Charles Cavender, Judge.*

*En banc.*

Mr. PAUL M. CLARK, Messrs. GOUDY & TWITCHELL and Mr. L. M. GODDARD, for plaintiff in error.

Mr. G. K. HARTENSTEIN, Mr. MILTON SMITH, Mr. CHARLES R. BROOK, Mr. W. H. FERGUSON and Mr. R. F. ARMSTRONG, for defendants in error.

Mr. GERALD HUGHES, Mr. CLAYTON C. DORSEY, Mr. CHARLES D. TODD, Mr. R. W. FLEMMING, Mr. T. J. LEFTWICH, Mr. L. R. TEMPLE, Mr. DELPH E. CARPENTER, Mr. CHARLES F. TEW, Mr. WALTER E. BLISS and Mr. L. R. RHODES, *amici curiae.*

Opinion by Mr. Justice Teller.

PLAINTIFF in error is the owner of the Antero Reservoir, located on the South Fork of the South Platte River, and the Lost Park Reservoir, located on Goose Creek, or Lost Park Creek, and duly filed its statement of claim in a proceeding to adjudicate water rights in Water District No. 23.

For the first named reservoir a priority was claimed to

the extent of two billion, five hundred and fifty-two million, six hundred and fifty-four thousand, nine hundred and eighty-six cubic feet, as of November 15, 1888, and one billion, one hundred and eighty-six million, five hundred and thirty-five thousand, eight hundred and nineteen cubic feet, by way of an enlargement, as of November, 1907; and for the other reservoir a priority was claimed to the extent of two billion cubic feet, as of January 1, 1891.

The referee found the claimant entitled to an appropriation, for the original construction, to the amount claimed, as of March 8, 1891, and, by way of enlargement, one billion, one hundred and seventy-four million, five hundred and two thousand, one hundred and eighty-two cubic feet, as of November 1, 1907, provided the claimant proceed with due diligence to complete the reservoir to the above named capacity.

He found that the Lost Park Reservoir was entitled to an appropriation of two billion cubic feet, as claimed, as of January 1, 1891.

Exceptions having been filed to the referee's report, the court made new findings, and gave to the Antero Reservoir an appropriation of three billion, seven hundred and twenty-seven million, one hundred and fifty-seven thousand, one hundred and sixty-eight cubic feet—its full capacity— as of October 8th, 1907. It gave to Lost Park Reservoir an appropriation of two billion cubic feet, as of date of October 3, 1907.

The cause is now here for review on error.

The substance of the several assignments of error is that the court erred in not adopting the findings of the referee, instead of making new findings.

The record contains a large quantity of evidence as to the beginning of work on the reservoir, and the prosecution of it. From this it appears that from 1891 to June, 1894, there was some actual construction work carried on; that later, for several years, the only work done was by way of keeping up the fences and buildings on the property,

and that from 1898 to the year 1907, when claimant purchased the property, it was rented, and no work done by way of construction. There is ample evidence to support the court's finding that the work had not been carried on with diligence from 1894 to 1907, and that the claimant had no right to an appropriation dated prior to 1907. Under these circumstances, to set aside the court's findings would be a violation of a well settled rule, and without justification.

The former opinion is withdrawn and the judgment affirmed.

Judgment affirmed.

Mr. Justice Garrigues and Mr. Justice Scott dissent.

GARRIGUES, J., *Dissenting:*

I can not agree with the majority opinion. All the evidence was taken before a referee, who made findings of fact and drafted a decree based thereon, as required by statute. The referee found that construction work was commenced by one Cyrus Richardson in 1891, who soon thereafter conveyed his holdings to the Highline Reservoir Company, of which he was president and general manager; that the company proceeded diligently with the work and there was expended some $50,000.00 on the enterprise prior to 1899; that on account of Richardson's death in 1894, coupled with the great financial panic lasting several years, the construction force was reduced in 1894, but work continued without substantial interruption until 1899; that the altitude of the reservoirs in the mountains, with the attendant long winter seasons, made it impracticable to prosecute the work during the winter months; that some work was done after 1899, but active work of construction upon a large scale was not resumed after 1899 until 1907, when the present claimant took possession of and carried the enterprise to completion; that claimant's predecessors made diligent efforts to complete the enterprise, and the delay was due to the death of Richardson in 1894, and the great financial stringency following the panic of 1893; that

the work of construction was of great magnitude *and carried on with due diligence,* and there was no intention at any time of abandoning the enterprise.

The court made the same identical findings of fact; in other words, it adopted the referee's findings as its own, except it omitted therefrom the phrase I have italicized, "and carried on with due diligence," and found that construction work was suspended in 1899 (not 1894, as stated in the majority opinion), and not resumed until 1907. It made no affirmative finding of lack of diligence; it simply found that work was suspended from 1899 to 1907, and on this finding it denied claimant the right of relation.

The referee found the priorities should date by relation back to the inception of the work in 1891, and the only point in the case is whether the decree reported by the referee as to the dates of priorities should have been adopted by the court.

The court entered a decree denying claimant the right of relation, and it did so solely because it found work had been suspended from 1899 to 1907. The majority opinion states the court found that the work of construction had not been carried on with diligence from 1894 to 1907. The court made no such finding. It adopted the finding of the referee that work had been carried on with diligence from 1891 to 1899.

The majority opinion holds, "under these circumstances, to set aside the court's findings would be a violation of a well settled rule, and without justification." The rule is not given. Apparently it is so well settled that it need not be stated. The trial court did not see or hear a single witness on the stand, and under "a well settled rule" of this court is in no better position to judge of the evidence and its legal effect than a court of review. The evidence was taken by a referee, reduced to writing and filed in court as required by statute, and in this respect is in the nature of a deposition, of which we are in as good position to judge as the trial court and are the final judges. Its truthfulness is

not in dispute and there is no conflict in and no controversy over the date of commencement of work in 1891 and the good faith with which it was prosecuted. This is all conceded. Both the court and referee agreed and found that it was a work of unusual magnitude, surrounded with great difficulty and carried on with diligence until 1899; that there was always an honest endeavor and intention to complete the project, and the good faith and *bona fide* intention and endeavor of the various owners is not questioned by any one. Upon these matters the referee and court are in accord. The project was begun by Richardson in the interest, and on behalf of, the consumers of water under the Highline Canal for the purpose of supplementing their ditch rights for irrigation. These persons were farmers, limited in means, and the stringency following the panic of 1893 crippled and hindered them in the prosecution of the work. The construction was exceedingly difficult and on account of the inaccessibility in the mountains and the shortness of the season, the work was necessarily slow. During the cessation of active work, the property was in the custody of caretakers and the enterprise was never abandoned. It is a question of law whether the cessation of active work from 1899 to 1907 deprived claimant of the benefit of the doctrine of relation. It does not involve the credence to be given to conflicting evidence by a court seeing and hearing the witnesses on the stand. The question is whether, as a matter of law, claimant is entitled, under the evidence, to have the priorities date by relation from 1891, or has forfeited this right. Whether claimant is entitled to have extended to it this doctrine, or should be deprived of that valuable right is a question of law which it is clearly our duty to settle. Upon review, the question should be determined by this court. The finding of the lower court depriving claimant of the right of relation is not final or binding upon us, but is the very reason why claimant is entitled to bring the case here for review and have settled by the highest court whether or not it is entitled to the benefit of this doctrine.

I am authorized to state that Mr. Justice Scott concurs in this dissenting opinion.

Decided March 5, A. D. 1917.   Rehearing denied December 2, A. D. 1918.